# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | |
|---|---|
| RYAN MITCHELL,<br><br>Plaintiff,<br>vs.<br><br>TRANS UNION, LLC,<br>and BANCFIRST,<br><br>Defendants. | **Case No. 17-2036**<br><br>**SECOND AMENDED COMPLAINT** |

COMES NOW the Plaintiff, Ryan Mitchell, and for his Second Amended Complaint against the Defendants, BancFirst, and Trans Union, LLC, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## JURISDICTION & VENUE

2. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681*p* and 28 U.S.C. § 1331.

3. Venue in this District is proper in that Plaintiff resides here, Defendants transact business here and the conduct complained of occurred here.

## PARTIES

4. Ryan Mitchell ("Plaintiff") is a natural person that resides in the State of Kansas.

5. Plaintiff is a “consumer” as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. BancFirst ("BancFirst") is a foreign bank that regularly transacts business in Kansas.

7. BancFirst is a furnisher of information as contemplated by the FCRA, § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

8. Trans Union, LLC ("Trans Union") is a foreign limited liability company that regularly transacts business in Kansas.

9. Trans Union is a national consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

**FACTS COMMON TO ALL CLAIMS**

10. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

11. In August of 2010, Plaintiff purchased 2010 Ford F-150 by entering into a financing agreement (“the car loan”) with BancFirst in the amount of twenty-two thousand, five hundred and sixty-six dollars ($29,566.00).

12. BancFirst began reporting information about the car loan to the three major consumer reporting agencies (“CRAs”), Equifax Information Services, LLC, (“Equifax”), Experian Information Solutions, Inc. (“Experian”) and Trans Union, LLC (“Trans Union”).

13. In December 2015, Plaintiff obtained a copy of his credit report and was alarmed to discover that BancFirst was reporting inaccurate information regarding the car loan.

14. BancFirst was reporting that Plaintiff was repeatedly late in making his payments in 2015, reflecting a total of seven (7) payments that were more than thirty (30) days past due.

15. Plaintiff was not late on any payments made to BancFirst in 2015.

16. On or about February 2, 2016, Plaintiff sent a letter to each of the CRAs disputing the inaccurate information being reported by BancFirst about the car loan.

17. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, the CRAs were required to reasonably investigate Plaintiff's dispute and also forward it on to the furnisher of the information, BancFirst.

18. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, BancFirst was then obligated to reinvestigate the disputed information on Plaintiff's report for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

19. In response to Plaintiff’s dispute, Experian and Equifax deleted the inaccurate BancFirst information from Plaintiff’s credit report.

20. Trans Union, however, responded by letter dated March 5, 2016, stating it had verified the BancFirst information and no changes were made.

21. Upon information and belief, BancFirst indicated to Trans Union that it verified the accuracy of the information being reported.

22. On or about March 8, 2016, Plaintiff sent another letter to Trans Union disputing the inaccurate information concerning the BancFirst car loan.

23. Trans Union responded by letter dated April 10, 2016, stating new information had been provided regarding the account.

24. However, no new information appeared to have been added to the BancFirst tradeline on Plainitff's report and the disputed inaccurate late payments remained.

25. Upon information and belief, BancFirst again verified to Trans Union that it had verified the accuracy of the information being reported.

26. On or about April 15, 2016, Plaintiff sent another letter to Trans Union disputing the inaccurate information reported by BancFirst about the car loan.

27. Plaintiff never received any correspondence from Trans Union indicating what investigation occurred, if any, or whether BancFirst verified the accuracy of the disputed information.

28. However, in May 2016, Plaintiff obtained a copy of his credit report and learned that the BancFirst account was still reporting the inaccurate information.

29. Upon information and belief, BancFirst had again verified to Trans Union that it had verified the accuracy of the information being reported.

30. Plaintiff then contacted BancFirst directly about the inaccurate reporting.

31. BancFirst responded with a letter dated May 6, 2016, informing Plaintiff that the payment history of his account did not reflect any late payments in 2015.

32. On or about June 6, 2016, Plaintiff sent a final letter to Trans Union disputing the inaccurate information being reported byBancFirst about the car loan. He included a copy of the letter from BancFirst stating that he was not late on any payments in 2015.

33. Plaintiff never received any correspondence from Trans Union indicating what investigation occurred, if any, or whether BancFirst verified the accuracy of the disputed information.

34. However, in July 2016, Plaintiff obtained a copy of his credit report and learned that the BancFirst account was still reporting the inaccurate information.

35. Upon information and belief, BancFirst had again verified to Trans Union that it had verified the accuracy of the information being reported.

36. Plaintiff justifiably fears that BancFirst and Trans Union will continue to report the negative and inaccurate information about him. He also justifiably fears and believes that this negative and inaccurate information will continue to negatively affect his credit rating absent litigation.

37. Additionally, on or about June 1, 2016, Plaintiff contacted a collection company, Diversified Consultants, Inc. and settled an outstanding debt allegedly owed to Verizon Wireless.

38. As such, Plaintiff contacted Trans Union by letter June 17, 2016, requesting the balance reporting on the Verizon Wireless account be removed from his credit report.

39. Plaintiff never received any correspondence from Trans Union indicating what investigation occurred, if any, or whether Verizon Wireless verified the accuracy of the disputed information.

40. On or about August 10, 2016, Plaintiff sent another letter to Trans Union about the Verizon Wireless account balance.

41. Again, Plaintiff did not receive any correspondence from Trans Union indicating what investigation occurred, if any, or whether Verizon verified the accuracy of the disputed information.

42. Despite Plaintiff's efforts to remove the negative and inaccurate information from his credit report, BancFirst and Trans Union refuse to remove or correct the inaccurate account information.

43. As a result of BancFirst and Trans Union's violations of the FCRA, Plaintiff has suffered and continues to suffer actual damages, including denial of credit, lost opportunity to receive credit, damage to reputation, worry, distress, frustration, embarrassment, invasion of privacy, humiliation, and other damages in an amount to be determined by the jury in addition to the statutory damages in an amount to be determined by the Court.

**<u>FIRST CLAIM FOR RELIEF</u>**

**(Negligent and Willful Violations of 15 U.S.C. § 1681*e*(b) by Trans Union)**

44. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

45. A "consumer reporting agency" is defined in 15 U.S.C. § 1681*a*(f) as follows:

> "[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

46. Trans Union is a consumer reporting agency as defined by Section 1681*a*(f) of the FCRA.

47. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a).

48. Section 1681*o* of the FCRA provides for civil liability against any CRA that is negligent in failing to comply with any requirement imposed under the Act.

**Trans Union's Failure To Follow Reasonable Procedures**

49. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

50. On more than one occasion in the two (2) years prior to the commencement of this lawsuit, Trans Union has prepared a consumer report concerning Plaintiff, and disseminated such reports to one or more third party(s), that failed to assure "maximum possible accuracy" of the information pertaining to Plaintiff.

51. The consumer report(s) prepared by Trans Union concerning Plaintiff contained inaccurate information in violation of 15 U.S.C. § 1681*c*(a)(3).

52. Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published concerning Plaintiff in violation of 15 U.S.C. § 1681*e*(b).

53. As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered

loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation, and embarrassment, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

54. Trans Union's continued refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***First Claim for Relief*** in his favor and against Trans Union, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

**(Negligent and Willful Violations of 15 U.S.C. § 1681*i* by Trans Union)**

55. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

56. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The FCRA imposes a 30-day time limitation for the completing of such an investigation. *Id.*

57. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

58. If information is deleted from a consumer's file following a dispute, "the information may not be reinserted in the file" unless the CRA certifies that the information is complete and accurate and, even then, the CRA "shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion[.]" *See* 15 U.S.C. § 1681*i*(a)(5)(B).

**<u>Trans Union's Reasonable Reinvestigation Violation</u>**

59. By letters dated February 2, 2016, March 8, 2016, April 15, 2016 and June 6, 2016, Plaintiff disputed the reporting of the BancFirst account information appearing on his credit report with Trans Union.

60. Additionally, by letters dated June 17, 2016 and August 10, 2016, Plaintiff disputed the reporting of the Verizon Wireless account information appearing on his credit report with Trans Union.

61. Trans Union conducted such a poor investigation of these disputes that it allowed the inaccurate information to remain on Plaintiff's credit report, despite receiving credible documentation supporting Plaintiff's claim that the information was inaccurate.

62. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

63. As a direct and proximate result of Trans Union's disregard for Plaintiff's disputes and its obligations under the FCRA as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

64. As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of credit opportunity, a justifiable fear to request credit, expenditure of time and resources, mental anguish, humiliation and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorney's fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

65. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorney's fees and costs pursuant 15 U.S.C. § 1681*n*.

**WHEREFORE** Plaintiff prays for judgment on this ***Second Claim for Relief*** in his favor and against Trans Union, and for the following relief:

a. Actual damages sustained;

b. Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

c. Punitive damages in an amount to be determined by the jury;

d. Reasonable attorney's fees and costs; and

e. Any further relief as deemed appropriate and just by this Honorable Court.

**<u>THIRD CLAIM FOR RELIEF</u>**

**(Negligent and Willful Violations of 15 US.C. § 1681s-2 by BancFirst)**

66. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

67. BancFirst is a "furnisher" as that term is used in 15 U.S.C. § 1681*s-2*.

68. Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681*s-2*(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported by the furnisher.

69. On at least four (4) occasions, namely Febuary 2, 2016, March 8, 2016, April 15, 2016 and June 6, 2016, Plaintiff contacted the CRAs and disputed the accuracy of the information being reported by BancFirst.

70. Plaintiff specifically advised the CRAs that a mistake had been made, that the BancFirst account was inaccurate and provided all necessary information to the CRAs

to support his dispute, and requested the false information be corrected accordingly.

71. Upon information and belief, and pursuant to 15 U.S.C. § 1681*i*(a)(2), BancFirst received notification of these disputes from the CRAs.

72. By failing to conduct a reasonable investigation of Plaintiff's disputes in this regard, BancFirst negligently and/or willfully violated § 1681*s-2*(b)(1) with respect to each dispute lodged by Plaintiff.

73. As a direct and proximate result of BancFirst's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorney's fees and the costs of this action, pursuant to 15 U.S.C. § 1681*o*.

74. BancFirst's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against BancFirst, pursuant to 15 U.S.C. § 1681*n*(a)(2).

**WHEREFORE** Plaintiff prays for judgment on this ***Third Claim for Relief*** in his favor and against BancFirst, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorney's fees and costs; and

(e) Any further relief as deemed appropriate and just by this Honorable Court.

**JURY DEMAND**

Plaintiff respectfully demands a jury trial on all issues so triable.

Respectfully submitted,

**CREDIT LAW CENTER**

By: **s/Andrew M. Esselman**

Andrew M. Esselman #26113
4041 NE Lakewood Way, Suite 200
Lee's Summit, MO 64064
Tele: (816) 246-7800
Fax: (855) 523-6884
andrewe@creditlawcenter.com
**Attorney for Plaintiff**

**CERTIFICATE OF SERVICE**

This certifies that on this 17th day of August 2017, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, with a copy of such filing being sent to all counsel of record.

/s/ Andrew M. Esselman
**Attorney for Plaintiff**