**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**RYAN MITCHELL,**

**Plaintiff,**

**v.**

**BANCFIRST,**

**Defendant.**

**Case No. 17-2036**

**MEMORANDUM & ORDER**

This matter is before the court on defendant BancFirst's Motion to Dismiss for Lack of Jurisdiction (Doc. 11). Plaintiff Ryan Mitchell brings this action against defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Defendant argues the claim should be dismissed for lack of personal jurisdiction. For the following reasons, the court denies defendant's motion.

## I. Background

In August 2010, plaintiff, an Oklahoma resident, entered into a financing agreement with defendant, an Oklahoma banking corporation, in which defendant loaned plaintiff $29,566 for the purchase of a 2010 Ford F-150. Defendant then began reporting information about the loan to the three major consumer reporting agencies, including Trans Union. Plaintiff obtained a copy of his credit report in 2015 and alleges defendant had been reporting inaccurate information regarding the car loan, including reports that plaintiff was late making seven payments in 2015. Plaintiff began contacting the credit reporting agencies to correct the alleged misinformation. Trans Union responded, stating it had verified the information with defendant and did not change plaintiff's credit report. Despite plaintiff's repeated attempts to dispute the alleged inaccurate information, defendant and Trans

Union have not corrected plaintiff's credit report. Plaintiff initiated this lawsuit alleging violations of the FCRA. Specifically, plaintiff claims defendant violated its duty to investigate disputes initiated from consumers to the credit reporting agencies as to the accuracy of information reported by the furnisher as required by 15 U.S.C. § 1681*s*-*2*(b)(1). Plaintiff states that he contacted the credit reporting agencies to dispute the accuracy of the information being reported by defendant, and defendant failed to investigate these disputes. Plaintiff also alleges he directly contacted defendant regarding the inaccurate report, and defendant responded by letter stating he had no late payments on his account.

## II. Analysis

Defendant moved to dismiss the case under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing plaintiff has failed to establish personal jurisdiction in Kansas. Defendant states it is an Oklahoma corporation headquartered in Oklahoma City, OK and that all of its offices and branches are located within Oklahoma. Defendant states it has no employees or physical facilities in Kansas, it does not advertise or solicit customers in Kansas, and it is not registered to do business in Kansas. Less than one percent of its customers have a Kansas address. Plaintiff was an Oklahoma resident when he entered into the financing agreement with defendant, but plaintiff now lives in Kansas. Defendant argues that it does not have any continuous or systematic contacts with Kansas and has not purposefully directed any of its activities at Kansas. The only connection defendant claims to have with the forum in regard to this litigation is the fact that plaintiff currently lives in Kansas.

Plaintiff argues he has established personal jurisdiction because defendant purposefully directed its activities at the state of Kansas by inaccurately reporting credit information to Trans Union, which injured his reputation while he resided in Kansas.

In order for a court to exercise personal jurisdiction, a defendant must have "minimum contacts" with the forum state, "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiff bears the burden of establishing personal jurisdiction. *Id*. Nonresident defendants may possess the necessary minimum contacts with a forum in one of two ways: general jurisdiction or specific jurisdiction. General jurisdiction is "based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state." *Id.* at 1078. As plaintiff has not alleged general jurisdiction over defendant, the court will focus its analysis solely on specific jurisdiction.

A court may exercise specific jurisdiction over a defendant if the defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations omitted). The Tenth Circuit has delineated three factors that indicate purposeful direction: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

When analyzing whether a forum may assert specific jurisdiction over a nonresident defendant, courts must focus on the relationship between "the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Therefore, the inquiry depends on whether the defendant's "suit-related conduct" creates a "substantial connection with the forum state." *Id.* These contacts must arise out of contacts the "defendant *himself*" creates with the forum state, and cannot depend on the defendant's contacts with persons who reside in the forum state. *Id.* at 1122. Plaintiff's contacts with the forum state cannot be the decisive factor. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v.*

*Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.")). And a plaintiff cannot be the only link between the defendant and the forum; "[r]ather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

Plaintiff relies solely on the United States Supreme Court's decision in *Calder* to support his argument that this court may exercise personal jurisdiction over defendant. In *Calder*, a television actress brought a libel suit in California against a reporter and editor of the National Enquirer who both worked at the publication's Florida headquarters. 465 U.S. at 785–86. The Court found that although defendants were residents of Florida, they had knowingly caused injury to the plaintiff in California and California was the "focal point" of the story and of the harm suffered. *Id.* at 789–90. The Court noted that the story—which was drawn from California sources—was about the "California activities of a California resident," and the injury to the plaintiff's reputation and her emotional distress were suffered in California. *Id.* at 788–89.

Plaintiff argues his case is analogous to *Calder* because he has suffered reputational damage as a result of defendant's actions. Plaintiff accurately notes that Congress intended the FCRA to serve as a replacement for state law claims related to libel and invasion of privacy. *See, e.g.*, *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir. 1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy); Virginia G. Maurer, *Common Law Defamation and the Fair Credit Reporting Act*, 72 Geo. L.J. 95, 97 (1983) ("Prior to the FCRA, injuries that resulted from the dissemination of erroneous information by credit reporting agencies could be redressed through the common law action of defamation. The FCRA introduced a new means for consumers to redress such injuries."). In fact, this court found it had personal jurisdiction over a

nonresident defendant who had obtained a plaintiff's credit report without permission or cause in violation of the FCRA. *See Cole v. Am. Family Mut. Ins. Co.*, 333 F. Supp. 2d 1038, 1048 (D. Kan, 2004). This court noted that in enacting the FCRA, Congress intended to prevent invasions of consumers' privacy, and that in invasion of privacy actions, the "resulting injury is the mental distress from having been exposed to public view and that injury necessarily occurs in the forum where the plaintiff was injured." *Id.* (internal citation omitted). Because the defendant had obtained the plaintiff's credit report without authorization and while knowing that the plaintiff resided in Kansas, the defendant "purposefully direct[ed] his actions at Kansas and caus[ed] injury to plaintiff in Kansas." *Id.*

Plaintiff argues that much like a libel or invasion of privacy action, defendant's violations of the FCRA connected it to Kansas because that is where his injury took place.

Rather than rely on plaintiff's comparisons to *Calder*, the court is more inclined to review the personal jurisdiction issue considering *Cole* and FCRA cases from other jurisdictions.

Like *Cole*, other courts have exercised personal jurisdiction over nonresident defendants in cases involving unauthorized viewing of credit reports. *See, e.g.*, *Myers v. Bennett Law Offices*, 238 F. 3d 1068, 1074–75 (9th Cir. 2001) (finding defendant purposefully availed himself to the jurisdiction of Nevada because he knew plaintiffs lived in Nevada when he improperly accessed their credit report).

The consensus from these cases is that when a defendant improperly accesses a credit report, he does so with the knowledge that he is invading the plaintiff's privacy in the state where the plaintiff resides. *See Cole* 333 F. Supp. 2d at 1048; *Myers*, 238 F.3d at 1074 ("That mental distress [from having been exposed to public view] can only be felt where Plaintiffs' 'sensibilities' reside—that is, Nevada."). Personal jurisdiction is therefore appropriate in the forum where the plaintiff lives because the defendant purposefully directed its actions at that state. Knowledge of the plaintiff's state of

residence, therefore, is a key factor. *See Cole*, 333 F. Supp. 2d at 1048 ("From the information required to access a credit report . . . Adler was aware that plaintiff resided in Kansas. Accordingly, Adler's actions were 'expressly aimed' a plaintiff, a Kansas resident.").

In other FCRA cases, courts have exercised personal jurisdiction over defendants when the plaintiff can show defendant had knowledge of his residence. In *Gordon v. DTE Energy*, 680 F. Supp. 2d 1282 (W.D. Wash. 2010), the plaintiff sued a Michigan-based utility company for violations of the FCRA, alleging the defendant had not removed a fraudulent charge that appeared on her credit report. The court found it had personal jurisdiction over the nonresident defendant using the *Calder* test: 1) an intentional act, 2) expressly aimed at the forum state, 3) which causes harm that the defendant knows is likely to be suffered in the forum state. *Id.* at 1285.[1] The court noted that under the "express-aiming" element, "[k]nowledge of the plaintiff's residence is the crucial element." *Id.* Because the defendant had sent the plaintiff a fraud affidavit at her Washington address—after the plaintiff had contacted the defendant about the fraudulent charge—the court found that the defendant knew the plaintiff lived in Washington, and therefore it had expressly aimed its conduct at the state. *Id.* at 1285–86. The court further found that the defendant knew the harm would be suffered in Washington because, "harm due to violations of the FCRA occurs where the plaintiff feels the consequences, not where the event complained of occurred." *Id.* at 1286 (citing *Meyers*, 238 F.3d at 1074).

Similarly, in *Rivera v. Bank One*, 145 F.R.D. 614 (D.P.R. 1993), the plaintiff sued a bank for failing to correct false information on a credit report concerning a delinquent credit card payment. The court found personal jurisdiction in Puerto Rico, noting "the record contains ample evidence of communication between plaintiff and defendant which tend to establish that defendant was aware that its continued refusal to correct plaintiff's credit report was causing plaintiff injury in Puerto Rico." *Id.*

---

[1] As mentioned earlier, the Tenth Circuit also uses the *Calder* factors in analyzing whether a defendant purposefully directed its activities to a forum state. *See Dudnikov*, 514 F. 3d at 1072.

at 624. Because the defendant knew the plaintiff lived in Puerto Rico and continued to refuse to correct the credit report, the court found the defendant "could reasonably anticipate being hauled into court here to answer for its actions." *Id.* at 624–25.

Using a similar analysis, other courts have declined to exercise personal jurisdiction when there was no evidence to establish the defendant's knowledge of the plaintiff's residence. *See Screen v. Equifax Info. Sys.*, 303 F. Supp. 2d 685 (D. Md. 2004) (finding the Alabama-based defendant had not purposefully established contacts with Maryland because the defendant had never directly contacted the plaintiff in Maryland and had only sent a consumer dispute verification form regarding the plaintiff to the credit reporting agency); *Cisneros v. Trans Union, LLC*, 293 F. Supp. 2d 1156, 1166 (D. Haw. 2003) (finding that because defendants did not directly correspond with the plaintiff and there was no indication they were aware that the plaintiff resided in Hawaii or that any injury would occur in Hawaii, the "notions of fair play and substantial justice would not be served if these Defendants were found to avail themselves to personal jurisdiction in every state each time it reports information as requested by a credit reporting agency."), *Chyba v. TXU Energy*, No. 12-CV-0837 BEN NLS, 2012 WL 6608618, at *3 (S.D. Cal. Dec. 17, 2012) (finding no personal jurisdiction over a nonresident defendant in an FCRA case involving inaccurate credit reporting when the plaintiff failed to establish the defendant made any contact with California; rather, the plaintiff made unilateral, and unanswered, contact with the defendant.).

Here, plaintiff alleges he contacted the consumer reporting agencies on at least four occasions to dispute the accuracy of information being reported by defendant. Pursuant to 15 U.S.C. § 1681*i*(a)(2), defendant should have received notice of plaintiff's disputes from the consumer reporting agencies. Plaintiff claims defendant knew he was a Kansas resident, as it frequently sent correspondence to his Kansas addresses, including statements, advertisements, and other

correspondence related to plaintiff's relationship with defendant. (Doc. 18-1.) Specifically, in regards to this litigation, plaintiff directly contacted defendant after multiple attempts to correct the alleged inaccurate information on his credit report. He claims defendant responded to his inquiry in a letter sent to his Kansas address. (*Id.*) Comparing the facts of this case to other similar FCRA cases, the court finds plaintiff has established a *prima facie* case of personal jurisdiction over defendant. Although minimal, defendant's contacts with plaintiff—establishing its awareness of plaintiff's Kansas residency—are enough. Defendant knew that plaintiff was attempting to dispute information it provided to the consumer reporting agencies. Defendant allegedly continued to reverify the disputed information so that plaintiff's credit report remained incorrect. And defendant communicated directly with plaintiff by sending to plaintiff's Kansas address a letter in which it confirmed he had no late payments on his account. Yet plaintiff's credit report continued to reflect these inaccuracies. Much like *Gordon* and *Rivera*, defendant expressly aimed its activity at Kansas by contacting plaintiff in Kansas regarding the inaccuracies, while still failing to correct the misinformation which, therefore, caused injury to plaintiff in Kansas. By knowing that it was injuring plaintiff in Kansas, defendant could have reasonably anticipated being hauled into court here.

Despite having the necessary minimum contacts, the court must still determine whether exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In deciding whether the exercise of jurisdiction is reasonable, the court must consider "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998). As defendant is an Oklahoma

banking corporation headquartered in Oklahoma, the court finds the burden to litigate in Kansas is not so burdensome as to make the exercise of personal jurisdiction unreasonable. *See Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) ("[d]efending a suit in a foreign jurisdiction is not as burdensome in the past."). The remainder of the factors weigh in favor of Kansas exercising personal jurisdiction over defendant. The court, therefore, finds it has personal jurisdiction over defendant and denies its motion.

**IT IS THEREFORE ORDERED** that Motion to Dismiss for Lack of Jurisdiction (Doc. 11) is denied.

Dated January 9, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**